1
2
3
4
5
6

# IN THE UNITED STATES DISTRICT COURT

7

## FOR THE DISTRICT OF ARIZONA

8

9  Jose Abel Fierro,

No. CV-13-02173-PHX-PGR (BSB)

10              Plaintiff,

**REPORT AND**
**RECOMMENDATION**

11  v.

12  Charles L. Ryan, et al.,

13              Defendants.

14

15      On October 25, 2013, Plaintiff filed a civil rights complaint pursuant to 42

16  U.S.C. § 1983.  (Doc. 1.)  The Court subsequently granted Plaintiff *in forma pauperis*

17  status and dismissed the complaint for failure to state a claim with leave to amend.

18  (Doc. 18.)  On May 5, 2014, Plaintiff filed an amended complaint.  (Doc. 23.)  The Court

19  screened the amended complaint pursuant to 28 U.S.C. § 1915(e)(2) and dismissed

20  without prejudice counts two through six and defendants Ryan, Pratt, Badilla, Houze,

21  Molera, Piotrowsky, Barrera, Stephan, Fizer, Crabtree, Tucker, Morales, Theodore,

22  Ratas, Merchant, Does in Central Office Pain Management, Stark, Miller, Stowell,

23  Greeley, Anderson, Espinoza, Ghetts, Thompson, Brower, Mattos, Harvey, Lundberg,

24  and Wiggins.  (Doc. 23 at 16.)  The Court directed Defendants McCarville, Ochoa,

25  Pruett, Forester, Mcoffy, and Smith to answer count one.  (*Id.*)

26      On June 18, 2014, Plaintiff filed a motion for leave to amend his complaint.

27  (Doc. 24.)  The Court denied Plaintiff's motion for failure to comply with LRCiv 15.1(a),

28  which requires that the party seeking to amend a pleading attach a copy of the proposed

1   amended pleading as an exhibit to his motion.   (Doc. 25.)   Plaintiff has now filed a

2   motion for reconsideration of that Order and attached a proposed second amended

3   complaint.   (Doc. 28.)   The Court recommends that Plaintiff's pending motion be

4   construed as a renewed motion for leave to file a second amended complaint.

5        Under Rule 15 of the Federal Rules of Civil Procedure, Plaintiff needs leave of

6   court to file an amended complaint because he has previously amended his complaint.

7   *See* Fed. R. Civ. P. 15(a).   The Court further recommends that Plaintiff be granted leave

8   to amend and that his Second Amended Complaint be screened pursuant to 28

9   U.S.C. §§ 1915(e)(2) and 1915A(a).

10  **I.      Statutory Screening of Prisoner Complaints**

11       When screening a complaint under 28 U.S.C. § 1915A(a), the court must dismiss a

12  complaint, or any portion of a complaint, in which a plaintiff has raised claims that are

13  legally frivolous or malicious, that fail to state a claim upon which relief may be granted,

14  or that seek monetary relief from a defendant who is immune from such relief.   28 U.S.C.

15  § 1915A(b)(1),(2).

16       A pleading must contain a "short and plain statement of the claim showing that the

17  pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2) (emphasis added).   While Rule 8

18  does not demand detailed factual allegations, "it demands more than an unadorned, the

19  defendant-unlawfully-harmed-me accusation."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678

20  (2009).   "Threadbare recitals of the elements of a cause of action, supported by mere

21  conclusory statements, do not suffice."   *Id.*

22       "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a

23  claim to relief that is plausible on its face.'"   *Id*. (quoting *Bell Atlantic Corp. v. Twombly*,

24  550 U.S. 544, 570 (2007)).   A claim is plausible "when the plaintiff pleads factual

25  content that allows the court to draw the reasonable inference that the defendant is liable

26  for the misconduct alleged."   *Id.*   "Determining whether a complaint states a plausible

27  claim for relief [is] . . . a context-specific task that requires the reviewing court to draw

28  on its judicial experience and common sense."   *Id.* at 679.   Thus, although a plaintiff's

specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v.Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

## II.    Second Amended Complaint

In his Second Amended Complaint, Plaintiff alleges four counts against the following Defendants: (1) Charles Ryan, Director of the Arizona Department of Corrections (ADC); (2) Badilla #4389, correctional officer (CO) III at Rast Unit-Buckeye; (3) Michael McCarville, Associate Deputy Warden of the Rast Unit-Buckeye; (4) Houze, CO II at the Cimarron Unit-Tucson; (5) Molera, CO II at Cimarron Unit-Tucson; (6) Pitrowsky,[1] Sergeant at Cimarron Unit-Tucson; (7) Blanca Ochoa, Associate Deputy Warden at Cimarron Unit Tucson; (8) M. Mcoffy, Protective Segregation Administrator for ADC; (9) Keith Smith, Security Operations Administrator for ADC; (10) Shuster, Associate Deputy Warden, Morey-Unit, Buckeye; (11) Sanders, Associate Deputy Warden, Dakota Unit-Yuma; (12) Pruett, Deputy Warden Kaibab Unit-Winslow; (13) G. Fizer, Deputy Warden ASPC-Florence; (14) Quintero, Special Security Unit, APSC-Florence; (15) M. Stephan, CO III ASPC-Florence; (16) Jackson, Reclassification Officer APSC-Florence; (17) P. Wiggin, Reclassification Officer for ADC; (18) L. Forester, Associate Deputy Warden Cimarron Unit-Tucson; (19) Cary Tucker, Physician Assistant at Morey Unit-Buckeye; (20) Luen, CO III, Stiner Detention Unit-Buckeye; (21) Morales, Nursing Supervisor Stiner Unit-Buckeye; (22) B. Rojas, Facility Health Administrator at Buckeye; (23) K. Merchant, Medical Doctor, Stiner Detention Unit-Buckeye; (24) L. Malachinski, Medical Doctor, Buckley Unit-Buckeye;

---

[1] Plaintiff spelled this name Piotrowsky in his amended complaint. (Doc. 22.)

(25) Rioochi, Registered Nurse, West Medical-Tucson; (26) Lacrone, COII, Cimarron Unit-Tucson; (27) Stark, CO III at Dakota Unit-Yuma; (28) Miller, Nursing Supervisor Dakota Unit- Yuma; (29) Veckcovic, Medical Doctor, APSC-Florence; (30) F. Stowell, Facility Health Administrator ASPC-Winslow; (31) G. Greeley, Facility Health Administrator for ASPC-Winslow; (32) S. Anderson, Grievance Coordinator at ASPC-Florence; (33) M. Espinoza, Grievance Coordinator at ADOC; (34) M. Thompson, Medical Doctor ASPC-Florence; (35) Ryan Brower, Physician Assistant ASPC-Florence; (36) Shruff, Medical Doctor at ASPC-Florence; (37) L Brown, Medical Doctor, Manzanita Unit-Tucson; (38) T. Nash, Clinical Coordinator, Medical Complex-Tucson; and (39) East, Clinical Coordinator, Medical Complex-Tucson.  (Doc. 28 at 4-5.)

### A.    Allegations in Count One

In Count One, Plaintiff alleges that his safety was threatened in violation of the Eighth Amendment.  As summarized below, Plaintiff alleges that he was threatened and assaulted at various ADC facilities.  He further alleges that he repeatedly reported these threats and assaults and requested protective custody, but the Defendants ignored his reports and requests.

Plaintiff asserts that in January 2011, he had a "violent physical confrontation" with his cellmate, Nieto.  (Doc. 28 at 6.)  Nieto requested a cell change and was moved to a new cell.  (Doc. 28 at 6.)  After Nieto's cellmate was transferred, Nieto was moved back to Plaintiff's cell.  Plaintiff and Nieto told Defendant Badilla that the move was not going to work and that they had previously had an altercation.  Defendant Badilla stated that he could not help and left.  (Doc. 28 at 6, Doc. 23 at 4.)  On January 23, 2011, Nieto and Plaintiff had a "second violent confrontation" and, during the altercation, Plaintiff broke his right hand.  (Doc. 28 at 7, Doc. 23 at 4.)  Plaintiff alleges that he told Defendant Badilla more than once that he did not want to share a cell.  (Doc. 28 at 7.)

At some point while at ASPC-Lewis, Plaintiff filed a written request for protective segregation because he feared the Border Brothers.  (*Id.* at 7.)  Defendants McCarville and Mcoffy denied Plaintiff's request for protective segregation "disregarding the

excessive risk to Plaintiff's safety," and placed Plaintiff in the general population in the proximity of the Border Brothers.  (*Id.*)  Plaintiff appealed to Defendant Smith stating his safety concerns.  (*Id.*)  Defendant Smith denied Plaintiff's request for protective segregation and stated that Plaintiff's allegations were self-reported and unsubstantiated.  (*Id.*; Doc. 23 at 3.)

Plaintiff was transferred from ASPC-Lewis to ASPC-Tucson, Cimarraon Unit.  On March 11, 2012, Plaintiff was housed with inmate Gastelum, the head of the Border Brothers.  (Doc. 28 at 7.)  Gastelum learned that Plaintiff had requested protective segregation at ASPC-Lewis and went through Plaintiff's "personal boxes" and took "personal items."  (*Id.*)  Plaintiff and Gastelum then had a "violent physical confrontation."  (*Id.*)

Defendant Houze took Gastelum to medical.  (*Id.*)  Before going to medical, Gastelum allegedly told two other inmates, Lopez and Nunez, to "take care of Plaintiff."  (*Id.*)  When Defendant Houze returned, Plaintiff "begged" her several times not to open the cell door and informed her that the Border Brothers were going to beat him up.  Plaintiff asked Defendant Houze if he could speak to the sergeant-in-charge.  Defendant Houze did not tell the control room (Defendant Molera) not to open Plaintiff's cell door.  About an hour later, Defendant Molera opened Plaintiff's cell door three times.  (Doc. 28 at 7-8.)  Plaintiff struggled to keep the door closed, but inmates Lopez and Nunez eventually entered Plaintiff's cell and beat and kicked him.  (Doc. 28 at 8.)

When Defendant Houze returned from letting another pod out for breakfast, Plaintiff showed her his bleeding face and asked her why she or Defendant Molera opened his cell door.  She did not respond.  (Doc. 28 at 8.)  Plaintiff asked Defendant Houze if he could speak with the shift commander.  Plaintiff spoke with Defendant Pitrowsky and requested protective segregation.  (*Id.*)  Defendant Pitrowsky took Plaintiff to the North building where he was treated by medical staff members.  (*Id.*)

Defendant Pitrowsky took pictures of Plaintiff's injuries and helped him complete a request for protective segregation.  (Doc. 28 at 8.)  Plaintiff completed a protective

segregation inmate statement for Defendants Ochoa's and Mcoffy's review.  Defendants Ochoa and Mcoffy denied Plaintiff's request for protective segregation even though they allegedly knew he was the victim of a violent incident with Lopez and Nunez.  (*Id.*) Plaintiff appealed to Defendant Smith, but Defendant Smith denied the appeal stating that Plaintiff's allegations were self-reported and unsubstantiated.  (*Id.*)

Plaintiff was subsequently transferred back to ASPC-Lewis-Buckeye Morey Unit. (Doc. 28 at 8.)  On April 5, 2012, Plaintiff reported his problem with the Border Brothers to CO II Rich.  (*Id.*)  Another inmate, who was Plaintiff's friend, told him that he could not resolve his problem with the Border Brothers and, if Plaintiff stayed in ASPC-Lewis, Morey Unit, he would be assaulted.  (*Id.*)  Plaintiff was taken to the yard office where he completed a protective segregation statement for review by Defendants Mcoffy and Shuster.  (*Id.*)  Defendants Mcoffy and Shuster denied Plaintiff's request for protective segregation.  (*Id.*)  Plaintiff appealed that decision to Defendant Smith, who denied the appeal.  (*Id.*)

Plaintiff was transferred to ASPC-Yuma, Dakota Unit, general population in May 2012.  (Doc. 28 at 9.)  Inmates Hernandez and Castillo approached Plaintiff and told him that he "ha[d] to go or else."  (Doc. 28 at 9.)  Plaintiff was taken to the yard office and completed a protective segregation inmate statement for review by Defendants Sanders and Mcoffy.  (*Id.*)  Defendants Sanders and Mcoffy denied Plaintiff's request for protective segregation.  Plaintiff appealed the denial to Defendant Smith.  (*Id.*)  In the appeal, Plaintiff stated that he was assaulted on January 27, 2011 and March 11, 2012 and stated that he should not be housed with his "enemies," the Border Brothers.  (*Id.*) Defendant Smith denied the appeal.  (*Id.*)

Plaintiff was transferred to ASPC-Winslow and was placed in the general population on June 18, 2012.  (*Id.*)  That day, someone put a note under Plaintiff's cell door stating that he knew about Plaintiff's problem and if [Plaintiff] wanted to "run with la Raza," he would have to stab or kill anyone as they instructed.  (*Id.*)  Plaintiff told

1    Floor Officer Contreras what had transpired and was taken to the yard office, where he
2    verbally requested protective segregation.  (*Id.*)

3          Plaintiff completed a protective segregation inmate statement for Defendants
4    Pruett's and Mcoffy's review.  (*Id.*)  Defendants Pruett and Mcoffy denied Plaintiff's
5    request for protective segregation and placed him in alternative general population.
6    Defendant Barrera conducted a second review of Plaintiff's request and denied it.  (*Id.*)
7    Plaintiff appealed the denial to Defendant Smith who denied the appeal.  (*Id.* at 9-10.)

8          Plaintiff was transferred to ASPC-Florence.  (*Id.* at 10.)  There, Plaintiff ran into
9    his friend, Castro, "who had knowledge of the incident that almost occurred back in April
10   of 2012, at Morey Unit."  (*Id.*)  Castro wrote a letter to Defendants Fizer and Quintero
11   explaining that Mondragon, the head leader of the Border Brothers, gave the "green
12   light" to kill Plaintiff in April 2012 and that Nieto and Quinonez were ordered to carry
13   out the hit.  (Doc. 28 at 10.)  Plaintiff did not receive a response to the letter.  (*Id.*)

14         On June 20, 2013, Defendant Stephan approached Plaintiff's cell door and stated
15   that it was time for a maximum custody placement recommendation "or not."  (*Id.*)
16   Defendant Stephan recommended assignment to maximum custody because there were
17   no options available for "close custody." (Doc. 28 at 10.)   Plaintiff told Defendant
18   Stephan that he "want[ed] maximum custody."  (*Id.*)  Defendant Stephan allegedly
19   omitted from Plaintiff's reclassification form the number of times Plaintiff had been
20   physically assaulted by the Border Brothers in close custody yards, level four.  (*Id.*)

21         Plaintiff alleges that, although they were aware of the excessive risk to Plaintiff's
22   safety, Defendants Fizer, Wiggin, Jackson, and Quintero denied Plaintiff's request for
23   placement in maximum custody.  (Doc. 28 at 11.)  Defendant Fizer "had knowledge of
24   the threat to Plaintiff" and he withheld that information from other Defendants and prison
25   staff.  (*Id.*)

26         Plaintiff was transferred to ASPC-Tucson, Cimarron Unit where he was assaulted
27   by the Border Brothers on March 11, 2012.  (Doc. 28 at 11.)   An inmate approached
28   Plaintiff as soon as he entered the building and told him to "leave or else.  You know

- 7 -

what happened the last time you were here."  (*Id.*)  Plaintiff asked two COs if he could leave the yard.  The COs took Plaintiff to the yard office, where a lieutenant asked Plaintiff if he wanted protective segregation.  (*Id.*)

Plaintiff completed a protective segregation statement for review by Defendants Forester and Mcoffy and stated that Mondragon had put a hit on him.  Defendants Forester and Mcoffy were allegedly aware of the excessive risk to Plaintiff's safety, but denied Plaintiff's request for protective segregation status and placed him in alternative general population.  (Doc. 28 at 11.)  Plaintiff appealed to Defendant Smith and requested a copy of all of his paperwork.  (*Id.*)  Defendant Smith did not send Plaintiff a copy of his paperwork and denied the appeal, although he was allegedly aware of the risk to Plaintiff's safety.  (*Id.*)

Plaintiff was transferred back to ASPC-Lewis, Morey unit, where Mondragon had placed the "hit" on Plaintiff.  (Doc. 28 at 12.)  On December 26, 2013, Plaintiff entered the yard and was assaulted by two members of the Border Brothers.  (Doc. 28 at 12.)  The guard tower staff saw the assault and sounded the alarm.  Plaintiff again requested protective segregation.[2]  Plaintiff contends that Defendants Shuster, Pitrowsky, Sanders were aware of the risks to Plaintiff's safety.  (*Id.*)  He argues that Defendants Shuster and Mcoffy sent him to a prison yard where the Border Brothers are a security threat to the guards.  (*Id.*)

## B. Allegations in Count Two

In Count Two, Plaintiff alleges that several Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.  (Doc. 28

---

[2] Count One also includes allegations regarding Plaintiff's medical treatment that are repeated in Count Two.  The Court addresses those allegations in its discussion of Count Two.  Plaintiff specifically alleges that he was taken to the medical complex building where he was evaluated by R.N. Bundushi.  (Doc. 28 at 12.)  Defendant Tucker did not follow-up on Plaintiff's condition.  Plaintiff was not given any pain medication and was left to suffer.  (*Id.*)  He was also denied refills for his Gabapentin and Tramadol.  (*Id.*)  Medical staff refused Plaintiff's requests for treatment of his internal injuries.  (*Id.*)

at 14-20.)   He asserts that he made numerous requests for medical care, but that his requests were ignored or that he did not receive appropriate treatment.

Plaintiff alleges that, after the December 26, 2013 attack, he was taken to medical. (Doc. 28 at 14.)  Nurse Rodriguez referred Plaintiff to "complex medical" (*Id.*)  Upon his arrival at complex medical, Plaintiff told Nurse Bundushi that he had been kicked in the head, face, ear, shoulder, and lower back.  (*Id.* at 15.)  Nurse Bundushi evaluated Plaintiff and treated his external injuries.  (*Id.*)  Nurse Bundushi also consulted with Defendant Tucker over the phone.  (*Id.*)  Plaintiff alleges that Defendant Tucker did not order a follow-up appointment for Plaintiff and Plaintiff was not physically examined for his internal injuries.   (Doc. 28 at 15.)   Plaintiff also told Nurse Bundushi that his prescriptions for Gabapentin and Tramadol had expired December 19, 2013 and that he needed those prescriptions renewed for nerve and chronic pain.  (Doc. 28 at 15.)  Plaintiff alleges that Defendant Tucker knew of Plaintiff's medical problems, including acute right lumbar and radiating buttock pain, a herniated disc, and he disregarded an excessive risk to Plaintiff's health, pain, and suffering.  (*Id.*)  Plaintiff asserts that he submitted several health needs requests for a renewal of his Gabapentin and Tramadol "with no success. Def. Ryan. Statewide."  (*Id.*)

Plaintiff also alleges that Defendant Luen was responsible for reviewing inmate complaints in the Stiner Unit, and that Defendant Morales was responsible for processing "medical inmate complaints" at the Stiner Unit.  (*Id.*)  Plaintiff asserts that he sent an "inmate informal complaint resolution" to Defendants Luen and Morales requesting medical treatment related to the December 26, 2013 incident.  (*Id.* at 16.)  Plaintiff stated that he was repeatedly kicked in the head, face, left ear, right harm right shoulder, right hand, and lower right backside.  (*Id.*)  He stated that he had headaches, a deviated septum, severe ringing in one ear, "kick burns" on his right arm, and that his pre-existing shoulder, hand, and sciatic nerve injuries were aggravated in the assault.  He stated that Nurse Bundushi did not treat his internal injuries.  (*Id.*)  Plaintiff alleges that Defendants Luen and Morales did not respond to his informal inmate complaint.  (*Id.*)

On January 15, 2014, Plaintiff submitted an inmate letter to Defendant Rojas describing his injuries alleged sustained during the December 26, 2013 assault and asking for medical care to address his excruciating pain.  (Doc. 28 at 16-17.)  On February 4, 2014, Defendant Rojas responded that Plaintiff should submit a health needs request (HNR) directly to nursing staff if he experienced "signs/symptoms."  (*Id.* at 17.)  Plaintiff asserts that this response was deliberately indifferent to his medical needs because Defendant Rojas did not refer him to a specialist.  (*Id.*)

On January 20, 2014, Plaintiff wrote an inmate letter to Defendant Luen regarding his medical grievances.  He requested that Defendant Luen ensure that his January 6, 2014 grievance was processed because he was suffering from chronic pain.  (*Id.* at 18.)  On February 9, 2014, Plaintiff submitted an HNR "to medical" complaining that he had not received follow-up treatment for his injuries sustained during the December 26, 2013 assault.  (*Id.* at 17-18.))

In the meantime, on February 5, 2014, Plaintiff filed an inmate grievance with CO IV Theodore,[3] who is responsible for reviewing and processing grievances at the Stiner Unit.  (*Id.*)  Plaintiff complained that Defendants Luen and Morales had not resolved his complaints about the lack of medical care for his injuries related to the December 26, 2013 assault.  (*Id.*)  Plaintiff alleges that Theodore did not forward Plaintiff's grievance to Defendant Rojas.  (*Id.* at 19.)  Plaintiff asserts that he did not receive a response to his inmate letter or grievances from Defendants Luen, Morales, or Rojas.  (Doc. 28 at 18.)

Plaintiff further alleges that, while in Stiner Unit, he "submitted six HNRs to the nursing staff" stating that he was in pain and needed to be seen.  (*Id.* at 19.)  He received a response that he was scheduled for an appointment on February 25, 2014.  (*Id.*)  Plaintiff alleges that he was evaluated by Dr. Tucker on February 28, 2014, and he argues that Dr. Tucker did not properly review his medical file to appropriately recommend pain

---

[3] Plaintiff does not specifically name Theodore as a Defendant.  (Doc. 28 at 4-5.)  However, to the extent that he intended to name Theodore as a Defendant, the Court recommends that he be dismissed for the reasons set forth in the June 10, 2014 Order.  (Doc. 23 at 16.)

medication that took Plaintiff's allergy to aspirin and Tylenol into account.  (Doc. 28 at 19.)    Plaintiff was also evaluated by Dr. Merchant on January 23, 2014.  (*Id.*)  Plaintiff alleges that Dr. Merchant did not properly evaluate Plaintiff's medical file or test results to appropriately recommend pain medication.  (*Id.*)

Plaintiff was transferred to Buckley Unit in Buckeye, Arizona and was evaluated by Defendant Dr. Malachinski on May 28, 2014.  (*Id.*)  Plaintiff alleges that Defendant Malachinski informed him that the electromyography and nerve conduction test studies from February 6, 2012 did not establish that Plaintiff had a herniated disc.  (*Id.*)  Plaintiff asserts that the results from the tests at the University of Arizona Medical Center "state otherwise."[4]  (*Id.*)

Plaintiff also alleges that Defendants Tucker, Rojas, Malachinski, Ryan, and Pratt[5] failed to create an effective tracking and scheduling system for health care appointments or for medical records.  (*Id.*)  He further alleges that he asked Defendants Tucker, Merchant, Rojas, and Malachinski for appropriate diagnostic tests for his injuries sustained on December 16, 2013, but his requests "have fallen on deaf ears."  (*Id.* at 20.)

Finally, Plaintiff asserts that Defendant Ryan denied grievance appeal number L002-002-014 on May 27, 2014.  (*Id.*)  Defendant Ryan explained that Plaintiff had been seen by medical staff several times and had been prescribed pain medication.  (*Id.*)  Plaintiff argues that Defendant Ryan did not adequately responded to his grievance and has delayed, denied, or interfered with medical care related to Plaintiff's injuries and medical conditions.  (Doc. 28 at 20.)

## C.    Allegations in Count Three

In Count Three, Plaintiff again alleges that several defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.  Plaintiff

---

[4]  Plaintiff reiterates these allegations against Defendant Malachinski in Count Three.  (Doc. 28 at 27.)  The Court does not discuss these allegations again in relation to Count Three.

[5]  Plaintiff does not specifically identify Pratt as a defendant.  (Doc. 28 at 4-5.)  To the extent that Plaintiff intended to name him as a defendant, the Court recommends that he be dismissed for the reasons set forth in the June 10, 2014 Order.  (Doc. 23 at 16.)

alleges that on October 15, 2011, he developed hip pain that radiated into his right foot. (Doc. 28 at 21.)  He asserts that, on that evening, he was transported to "West Medical." (*Id.*)   Defendant Rioochi, a registered nurse, evaluated Plaintiff.   (Doc. 28 at 22.) Defendant Rioochi asked, "what is the problem."  (*Id.*)  Plaintiff told Defendant Rioochi that, out of nowhere, he had developed "excruciating pain."  (*Id.*)  Plaintiff speculated that his pain might be related to an old gunshot wound or to muscles that he had pulled on March 31, 2011.  (*Id.*)  Plaintiff asserts that he told Defendant Riochi about his medical problem more than once, but Defendant Rioochi "kept asking over and over the same thing."  (*Id.*)  He further alleges that Defendant Rioochi did not review his medical file, and wanted to give Plaintiff ibuprofen, even though Plaintiff is allergic to it, and did not consult the "provider on call" to determine what to do about Plaintiff's excruciating pain. (Doc. 28 at 22.)  He alleges that Defendant Rioochi stated that Plaintiff's complaints of pain were inconsistent with what Plaintiff was telling him.  (*Id.*)

Plaintiff further alleges that he continued to be in pain on October 17 and 18, 2011.  (Doc. 28 at 23.)  On October 20, 2011, he was sent to the "emergency department at the University of Arizona" where he was diagnosed with sciatica and a herniated lumbrosacal disc.  (*Id.*)  Plaintiff claims that on November 18, 2011, he needed his cellmate to help him walk, but "Sgt. Sway" threatened Plaintiff with disciplinary action if anyone helped him.  (*Id.*)  Plaintiff asserts that he was never evaluated by a specialist and that a "formal complaint to Deputy Warden Ochoa" was ignored.  (Doc. 28 at 23.)

On February 6, 2012, Plaintiff was sent "off site" for medical treatment and was diagnosed with "severe active right lumbrosacral polyradiculopathy" involving the L-5 and S-1 nerve roots.  (*Id.*)  Plaintiff was prescribed pain medication and diagnostic tests were ordered.  (*Id.* at 24.)

On March 11, 2012, Plaintiff was assaulted by two inmates and the assault allegedly exacerbated his pre-existing medical issues.  (*Id.*)  Plaintiff filed several health needs requests in April 2012.  (*Id.*)  On May 16, 2012, he filed "an inmate informal attempt at resolution" with Defendants Stark and Miller.  (*Id.*)  Plaintiff stated that he had

been in excruciating pain since October 16, 2011.  Plaintiff did not otherwise describe his medical condition.  (*Id.*)  Plaintiff alleges that Defendants Stark and Miller did not respond to his letter.  (*Id.*)

Plaintiff alleged that he continued to seek medical treatment.  After Nurse Practitioner Shelby evaluated Plaintiff on June 27, 2012, Plaintiff "received" Tramadol for his chronic pain and Gabapentin for his nerve pain.  (Doc. 28 at 25.)  On September 13, 2012, Dr. Gibula increased Plaintiff's dosage of Gabapentin for nerve pain management.  (*Id.*)  In December 2012, Defendant Dr. Veckcovic "took away Plaintiff's Gabapentin."  (*Id.*)  Plaintiff also alleges that, a day or so after his Gabapentin was terminated, his blood pressure "skyrocketed."  (*Id.*)  Although Plaintiff raised the issue with Defendant Veckcovic, he did not "call out" Plaintiff to be evaluated.  (*Id.*)  Plaintiff claims that he continues to be in pain.  (*Id.*)

On January 6, 2013, Defendant Ryan "partially" upheld Plaintiff's medical grievance No. W02-051-012.  (Doc. 28 at 26.)  However, Plaintiff asserts that he has not received paperwork that he needs to file a notice of claim under Arizona law.  (*Id.*)  Plaintiff alleges that, although he was written letters to Defendants Espinoza, Stephan, Anderson, and Ryan stating that he needs the "paper work for risk management," they have not responded.  (*Id.*)

Plaintiff further alleges that he continued to complain to medical personnel about his pain related to a herniated disc and a pinched nerve.  (Doc. 28 at 26.)  On April 25, 2013, Defendant Brower evaluated Plaintiff.  (*Id.*)  Plaintiff complained of pain related to his pinched sciatic nerve.  Defendant Brower did not prescribe Tramadol or Gabapentin.  (*Id.*)  Plaintiff saw Dr. Brower again on June 5, 2013.  (*Id.*)  Plaintiff again requested pain treatment for his pinched sciatic nerve and herniated disc.  Plaintiff was in pain and could "hardly walk."  (*Id.*)  Defendant Brower did not approve Plaintiff's request for Tramadol or Gabapentin and allegedly refused Plaintiff's June 14, 2013 request for referral for further diagnostic testing.  (*Id.*)  On June 20, 2013, a different doctor approved Plaintiff's

1    request for Gabapentin for his nerve pain.  (*Id.*)  On September 12, 2013, Defendant

2    Brower again denied Plaintiff's requests for Tramadol and Gabapentin.  (Doc. 28 at 27.)

3         On July 29, 2013, Defendant Dr. Shruff saw Plaintiff for complaints of pain

4    caused by his pinched sciatic nerve and herniated disc.  (Doc. 28 at 27.)  Dr. Shruff

5    denied Plaintiff's request for Tramadol and referred him for an "electrostimulation for his

6    spinal cord, lower back, major nerve leaving spine."  (*Id.*)

7         Plaintiff further alleges that on August 19, 2013, he was evaluated by Defendant

8    Dr. Thompson in relation to his sciatic nerve pain and his herniated disc.  (*Id.*)  Defendant

9    Thompson denied Plaintiff's request for Tramadol and did not explain why he

10   discontinued Plaintiff's Gabapentin.  (Doc. 28 at 27.)

11             **D.    Count Four**

12        Count Four asserts additional claims that several defendants were deliberately

13   indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment.

14   Plaintiff alleges that he broke his hand on January 27, 2011 during a fight with another

15   inmate.  (Doc. 28 at 28.)  He had surgery on his hand on February 23, 2011.  (*Id.*)  On

16   March 1, 2011, the surgeon removed the external sutures and instructed the prison

17   medical coordinator to bring Plaintiff back in thirty days to remove the pins.  (*Id.*)  On

18   March 3, 2011, the surgeon evaluated Plaintiff and again told the prison medical

19   coordinator, Defendant Nash, to bring Plaintiff back to have the pins removed.  (*Id.*)

20   Plaintiff alleges that Defendant Nash disregarded the surgeon's directive.  (*Id.*)  On May

21   18, 2011, Plaintiff's surgeon evaluated him and again told "the prison medical clinical

22   coordinator" that the pins needed to be removed from Plaintiff's hand.  (*Id.*)

23        On June 20, 2011, Plaintiff had surgery to remove the pins.  (*Id.* at 29.)  On June

24   28, 2011, the surgeon evaluated Plaintiff.  (*Id.*)  Plaintiff reported that he had ongoing

25   numbness, tingling, and pain.  (*Id.*)  Plaintiff states that the surgeon concluded that

26   because of the delay in removing Plaintiff's pins, sensory nerve injury had occurred.

27   (*Id.*)  The surgeon wrote a medical incident report for Defendants Nash and East.  The

28   surgeon recommended a CT scan of Plaintiff's hand that Plaintiff never received.  (*Id.*)

1    Plaintiff saw the surgeon again on August 8, 2011 for continued hand pain. (*Id.*)
2    Plaintiff asserts that the surgeon wrote "in his notes to the prison clinical coordinator
3    Def[endant] Nash or Def[endant] East that the hardware in Plaintiff's hand need[ed] to
4    come out due to complications." (*Id.*)  Plaintiff alleges that "prison medical staff" did not
5    pay attention to such risk. (*Id.*)

6    Plaintiff next alleges that, on September 20, 2011, he was instructed not to eat
7    anything because he was having surgery.  However, he was not transferred for surgery to
8    remove the hardware from his hand because Defendants Nash and East did not approve
9    the surgery. (*Id.*)  Thereafter, Plaintiff submitted several HNRs related to his hand pain
10    and his request for surgery. (*Id.*)  He claims that Defendants Nash and East were aware
11    that he needed treatment, but denied it. (*Id.*)

12    On March 16, 2012, Defendant Brown ordered x-rays for Plaintiff's hand that was
13    "re-broken" several days before. (*Id.*)  On July 10, 2012, Plaintiff was informed by
14    "medical staff" that Defendant Brown has cancelled all medical evaluation or treatment.
15    (*Id.*)  On July 10, 2012, Plaintiff submitted a "medical/inmate grievance" to Defendant
16    Stowell or Defendant Greeley asking for the removal of the hardware from his hand.
17    (Doc. 28 at 30.)  On July 12, 2012, Defendant Stowell responded that she did not see any
18    notes or health needs requests from Plaintiff related to his hand prior to July 10, 2012.
19    (*Id.*)  Plaintiff claims that he had sent several health needs requests about his hand. (*Id.*)

20    On August 13, 2012, Plaintiff sent a prison inmate letter to Defendant Greeley
21    complaining that his broken right hand had not been treated.  He also complained about
22    the lack of treatment for pain caused by his pinched sciatic nerve. (*Id.*)  Plaintiff asserts
23    that, because he did not get any relief, he filed a grievance appeal to Defendant Ryan on
24    October 13, 2012 requesting removal of the hardware in his hand. (Doc. 28 at 31.)

25    **III.   Plaintiff's § 1983 Claims**

26    To prevail in a 42 U.S.C. § 1983 claim, a plaintiff must show that (1) acts by the
27    defendants (2) under color of state law (3) deprived him of federal rights, privileges or
28    immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158,

1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)).  In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant.  *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

### A.   Count One

Typically, to state an Eighth Amendment claim for threat to safety an inmate must allege facts to support that he was incarcerated under conditions posing a substantial risk of harm and that prison officials were "deliberately indifferent" to those risks.  *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994).  To adequately allege deliberate indifference, a plaintiff must allege facts to support that a defendant knew of, but disregarded, an excessive risk to inmate safety.  *Id.* at 837.  That is, "the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference." *Id.*

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety.  *Farmer*, 511 U.S. at 835.  "Neither negligence nor gross negligence will constitute deliberate indifference."  *Clement v. California Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983).

### 1.   Defendant Badilla

The Court previously dismissed Defendant Badilla, stating that Plaintiff's allegations that he and his cellmate told Defendant Badilla on one occasion that they did not want to share a cell, and that Badilla did not act in response to the information, did not demonstrate that Badilla disregarded an excessive risk to Plaintiff's safety. (Doc. 23 at 11.)  In his Second Amended Complaint, Plaintiff alleges that he told Defendant Badilla "more than once" that he did not want to share a cell with his cellmate.  (Doc. 28 at 7.)  Plaintiff's amended allegations against Defendant Badilla are still insufficient to

1  state a threat of safety claim.[6]   Accordingly, the Court recommends that Defendant

2  Badilla be dismissed.

3        **2.      Defendants Houze and Molera**

4        The Second Amended Complaint alleges that Plaintiff told Defendant Houze that

5  his cell door should not be opened because he feared attack by other inmates and that

6  Defendant Molera later opened the cell door three times to admit another inmate.

7  (Doc. 28 at 7-8.)  Plaintiff alleges that on the third time Defendant Molera opened the

8  door, two other inmates entered Plaintiff's cell and attacked him.  (*Id.* at 8.)

9        The Court previously found that Plaintiff's allegations regarding the actions of

10 Defendant's Houze and Molera were vague and dismissed those Defendants.  (Doc. 23 at

11 11.)  In the Second Amended Complaint, Plaintiff expands on his claims.  He adds that he

12 was unable to speak directly with Defendant Molera and argues that Defendant Houze

13 did not notify Defendant Molera not to open Plaintiff's cell door.   (Doc. 28 at 7-8.)

14 Plaintiff again has not alleged sufficient facts to demonstrate that Defendant Molera was

15 aware of, and disregarded, an excessive risk to Plaintiff's safety.  Accordingly, Defendant

16 Molera should be dismissed.

17        In the amended complaint, Plaintiff alleged that he told Defendant Houze not to

18 open his cell because the Border Brother were "going to beat [him] up," and that he

19 "feared for his safety," because he had had three "violent confrontations" with the Border

20 Brothers.  (Doc. 22 at 5.)  In his Second Amended Complaint, Plaintiff adds that he told

21 Defendant Houze not to open his cell door because the Border Brothers were going to

22 "assault" him, that he told her several times not to open his cell door, and that she

23 responded that she would not open his cell door.  (Doc. 28 at 7.)  He also alleges that

24 about an hour passed from when he told Defendant Houze not to open his cell door and

25 when Defendant Molera opened his cell door.  (Doc. 28 at 7.)  He further adds that

26

27  _____

28        [6] Plaintiff reiterates his claims against Defendant Badilla in Count Four.  (Doc. 28 at 28.)  The Court addresses these claims once and does not include them in its discussion of Count Four.

1   Defendant Molera later opened his cell door to admit inmates Lopez and Nunez, not his

2   cellmate.  (*Id.*)

3        Plaintiff again has not alleged sufficient facts to demonstrate that Defendant

4   Houze was aware of an excessive risk to Plaintiff's safety and that she disregarded that

5   risk.  Plaintiff does not allege that he told Defendant Houze never to open his cell door

6   and, even if he did, never opening Plaintiff's cell door would be impractical.

7   Additionally, Plaintiff does not allege that Defendant Houze opened his cell door.

8   Accordingly, the Court recommends that the Plaintiff's claims against Defendant Houze

9   be dismissed.

10              **3.     Defendant Pitrowsky**

11        As in the amended complaint, in the Second Amended Plaintiff alleges that, after

12   he was attacked in his cell, he told Defendant Pitrowsky that he wanted to be transferred

13   to protective segregation.  (Doc. 22 at 6; Doc. 28 at 8.)  Defendant Pitrowsky took

14   pictures of Plaintiff's injuries, took him to medical, and helped him complete a protective

15   segregation request.  (Doc. 22 at 6; Doc. 28 at 8.)  As the Court previously found, these

16   allegations do not demonstrate that Defendant Pitrowsky was aware of, and disregarded,

17   an excessive risk to Plaintiff's safety.  (*See* Doc. 23 at 12.)  Accordingly, Defendant

18   Pitrowsky should be dismissed.

19              **4.     Defendant Stephan**

20        As in the amended complaint, in the Second Amended Complaint, Plaintiff alleges

21   that, on June 20, 2013, Defendant Stephan approached Plaintiff's cell door and stated that

22   it was time for a maximum custody placement recommendation.  (Doc. 22 at ; Doc. 28 at

23   10.)  Defendant Stephan recommended "prison yard level four" but failed to include the

24   number of times Plaintiff had been assaulted in the reclassification form, even though

25   Plaintiff had had "numerous issues at close custody yards."  (Doc. 22 at. 9; Doc. 28 at

26   10.)  Plaintiff told Defendant Stephan that he wanted "maximum custody."  (Doc. 22 at 9;

27   Doc. 28 at 10.)  Plaintiff further alleges that Defendant Stephan did not approve his

28   placement in maximum custody.  (Doc. 28 at 11.)

These allegations do not demonstrate that Defendant Stephan was aware of an excessive risk to Plaintiff's safety that he disregarded.  (*See* Doc. 23 at 12.)  Accordingly, Plaintiff has failed to state a claim upon which relief can be granted against Defendant Stephan and the Court recommends that he be dismissed.

### 5.      Defendants Fizer, Quintero, and Wiggin

In the Second Amended Complaint, Plaintiff alleges that in 2013, another inmate wrote letters to Defendants Fizer and Quintero describing an attack on Plaintiff that occurred in 2012.  (Doc. 28 at 10.)  Plaintiff alleges that Defendants Fizer and Quintero did not respond to the letters.  (Doc. 28 at 10.)  As in the amended complaint, Plaintiff also alleges that Defendants Fizer and Wiggin did not approve Plaintiff's placement in maximum custody.  (Doc. 22 at 9; Doc. 28 at 10.)  In the Second Amended Complaint, Plaintiff adds that Defendant Fizer and Quintero were aware of "facts in writing of the Plaintiff's assaults by the [Border Brothers] at Rast Unit-Buckeye Az. Cimarron Unit-Tucson Az. And the times he was run out of several prison yards."  (Doc. 28 at 10.)  Plaintiff asserts that "all this information is available to all high ranking staff when [an inmate] is known to have issues with a certain gang member."  (*Id.*)  He alleges that this information was contained in his "AIMS file and "I/M letters," "so they knew about this issue and placed Plaintiff in harm[']s way."  (*Id.*)  Plaintiff adds that Defendant Wiggin did not review his AIMS File.  (*Id.* at 11.)  He further alleges that Defendants Quintero, did not approve Plaintiff's placement in maximum custody.  (*Id.*)

The Court previously dismissed Plaintiff's claims against Defendants Fizer and Wiggin for failure to state a claim because Plaintiff did not demonstrate that they were aware of, and disregarded, an excessive risk to Plaintiff's safety.   (Doc. 23 at 12.)  Although Plaintiff has expanded his allegations against Defendants Fizer and Wiggin, those allegations are still insufficient to state a claim against them.  (*See* Doc. 23 at 12.)  Accordingly, the Court recommends that Defendants Fizer and Wiggin be dismissed.

Similarly, Plaintiff's allegations against Defendant Quintero are conclusory and do not demonstrate that Defendant Quintero was aware of, and disregarded, an excessive

risk to Plaintiff's safety.  Accordingly, the Court recommends that Defendant Quintero be dismissed.

### 6.     Defendant Jackson

In the Second Amended Complaint, Plaintiff alleges that Defendant Jackson denied Plaintiff's placement in maximum custody on July 12, 2013.  (Doc. 28 at 11.) This conclusory allegation does not demonstrate that Defendant Jackson was aware of, and disregarded, an excessive risk to Plaintiff's safety.  Accordingly, Plaintiff has failed to state a claim upon which relief can be granted against Defendant Jackson and the Court recommends that he be dismissed.

### 7.     Defendants McCarville, Ochoa, Pruett, Forester, Mcoffy, Smith, Shuster, and Sanders

In the June 10, 2014 Order, the Court ordered Defendants McCarville, Ochoa, Pruett, Forester, Mcoffy, and Smith to respond to Count One of the amended complaint. (Doc. 23 at 15.)  In the Second Amended Complaint, Plaintiff asserts the same allegations against those Defendants as he did in the amended complaint.  (Doc. 23 at 5-7; Doc. 28 at 8-13.)  He also asserts similar allegations against Defendants Shuster and Sanders, who were not named as defendants in the amended complaint.  (Doc. 8-9, 12.)  Based on the reasoning underlying the Court's June 10, 2014 Order, liberally construed, Plaintiff has stated an Eighth Amendment threat to safety claim in Count One of the Second Amended Complaint against Defendants McCarville, Ochoa, Pruett, Forester, Mcoffy, Smith, Shuster, and Sanders and the Court recommends that those Defendants be required to respond to Count One of the Second Amended Complaint.  (*See* Doc. 23 at 15.)

### B.     Count Two

In Count Two, Plaintiff alleges that several Defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment. (Doc. 28 at 14.)   To state a § 1983 medical claim, a plaintiff must show that the defendants acted with "deliberate indifference to serious medical needs."  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104

(1976)).  A plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. *Jett*, 439 F.3d at 1096 (quotations omitted).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference.  *Jett*, 439 F.3d at 1096.  Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs.  *Estelle*, 429 U.S. at 104-05; *Jett*, 439 F.3d at 1096.

However, "[a] difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).  A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference.  *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).  The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

### 1.  Defendant Tucker

Plaintiff alleges that, although Defendant Tucker was aware of Plaintiff's medical problems from his medical file, during "a verbal consult" with Nurse Bundushi on December 26, 2013, he did not order follow-up medical care regarding Plaintiff's injuries sustained during the December 26, 2013 attack by two inmates.  (Doc. 28 at 15.)  He further alleges that Defendant Tucker evaluated him on February 28, 2014, but that he failed to adequately review Plaintiff's medical record, or HNRs, and that he wanted to

1   give Plaintiff ibuprofen, although Plaintiff's medical file indicated that he is allergic to

2   aspirin and Tylenol.  (Doc. 28 at 19.)

3         Plaintiff asserted similar allegations against Defendant Tucker in the amended

4   complaint (Doc. 22 at 12-13), and the Court found them conclusory and concluded that

5   they failed fail to state a claim.[7]   Although Plaintiff has added some detail to his

6   allegations against Defendant Tucker, these allegations are not sufficient to state a claim.

7   Accordingly, the Court recommends that Defendant Tucker be dismissed.

8                   **3.       Defendants Ryan, Luen, Morales, and Rojas**

9         In Count Two, Plaintiff alleges that Defendants Ryan, Luen, Morales, and Rojas

10  disregarded his informal inmate letter, inmate grievances, or grievance appeals related to

11  the lack of medical care for injuries Plaintiff sustained during an attack by two inmates

12  on December 26, 2013.  (Doc. 28 at 16-20.)  Plaintiff alleges that those informal letters

13  and grievances described the December 26, 2013 attack and the injuries that he sustained

14  during that attack.[8]  (Doc. 28 at 16, 18.)  He alleges that, to date, he has not received

15  proper treatment for his "internal injuries."  (Doc. 28 at 20.)

16        Defendant Rojas responded to Plaintiff's inmate letter by instructing him that he

17  should submit a health needs request if he was experiencing any medical issues.  (Doc. 28

18  at 16-17.)  These allegations do not state a claim for deliberate indifference to Plaintiff's

19  serious medical needs.  Additionally, Plaintiff's allegations that Defendants Ryan, Luen,

20  _____

21        [7]   Additionally, failure to check Plaintiff's medical file amounts, at most, to
    negligence.  *See Walter v. Lancaster State Prison Medical Dept.*, 2010 WL 2680535, at
22  *6 (C.D. Cal. 2010) (finding that doctor's failure to check a plaintiff's medical file based
    on his statements about his medical condition was no more than negligence).  An isolated
23  incident of arguable neglect does not constitute deliberate indifference to serious medical
    needs.   *See Jett*, 439 F.3d at 1096 ("If the harm is an 'isolated exception' to the
24  defendant's 'overall treatment of the prisoner [it] ordinarily militates against a finding of
    deliberate indifference.' ") (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.
25  1991)).

26        [8]   Plaintiff stated that he needed medical treatment after two inmates repeatedly
    kicked him in the head, face, left ear, right arm, right shoulder, right hand, and lower
27  right backside.  (Doc. 28 at 16.)  He stated that he had severe headaches, a deviated
    septum, his ears would not stop ringing, he had "kick burns" on his right arm, his prior
28  injuries to his right shoulder, previously broken right hand, and sciatica were aggravated
    during the attack.  (*Id.*)

1   and Morales failed to respond to a single informal inmate grievance do not support a

2   claim of deliberate indifference. Accordingly, the Court recommends that Defendants

3   Rojas, Ryan, Luen, and Morales be dismissed. (*See* Doc. 23 at 16.)

4               **4.   Defendant Malachinski**

5               Plaintiff alleges that Defendant Malachinski evaluated Plaintiff on May 28, 2014

6   and stated that Plaintiff did not have sciatica or a herniated disc. (Doc. 28 at 19.)

7   Plaintiff alleges that other medical findings conflicted with Dr. Malachinski's diagnosis.

8   Plaintiff further alleges that he told Defendant Malachinski he was in pain, but Defendant

9   Malachinski did not order any diagnostic tests. (Doc. 28 at 19-20.) Plaintiff's or another

10  medical provider's apparent disagreement with Dr. Malachinski's diagnosis or course of

11  treatment does not give rise to a claim of deliberate indifference. *See Sanchez,* 891 F.2d

12  at 242 ("A difference of opinion does not amount to deliberate indifference to [a

13  plaintiff's] serious medical needs."). Accordingly, Plaintiff has failed to state a claim

14  upon which relief can be granted against Defendant Malachinski and the Court

15  recommends that he be dismissed.[9]

16              **5.   Defendant Pratt**

17              Plaintiff asserts that Defendant Pratt did not create an effective tracking or

18  scheduling system for health care appointments or for prison medical records. (Doc. 28

19  at 19.) Plaintiff raised these same allegations in his amended complaint (Doc. 22 at 13),

20  and the Court found that they did not state a claim upon which relief could be granted.

21  (Doc. 23 at 12-13.) Accordingly, Plaintiff has again failed to state a claim upon which

22  relief can be granted against Defendant Pratt and the Court recommends that he be

23  dismissed.[10]

24  / / /

25

26  [9] Plaintiff asserts these same allegations against Defendant Malachinski in Count Three. (Doc. 28 at 27.) The Court will not revisit these allegations in its discussion of that count.

27

28  [10] Plaintiff also asserts these same allegations against Defendants Tucker, Rojas, Malachinski, and Ryan. (Doc. 28 at 19.) As the Court found in its June 10, 2014 order, these allegations fail to state a claim. (Doc. 23 at 12-13.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 6. Defendant Merchant

Plaintiff alleges that Defendant Merchant evaluated him on January 24, 2014 and did not adequately review Plaintiff's medical record to appropriately recommend pain medication.  (Doc. 28 at 19.)  Defendant raised these same allegations in his amended complaint (Doc. 22 at 13), and the Court dismissed them for failure to state a claim.  (Doc. 23 at 13-14.)  Accordingly, the Court recommends that Defendant Merchant be dismissed.

### C. Count Three

In Count Three, Plaintiff alleges that several Defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment. (Doc. 28 at 21-27.)  The standard for establishing such a claim is set forth above in Section III.B.

### 1. Defendant Rioochi

Plaintiff alleges that on a single occasion, Defendant Rioochi disregarded Plaintiff's complaints of "excruciating pain," and failed to prescribe pain medication or to contact the provider on call to determine how to treat Plaintiff's pain.  (Doc. 28 at 22.) Plaintiff states that Defendant Rioochi told Plaintiff that his complaints of pain were inconsistent with the information he provided about the alleged source of that pain.  (*Id.*) He also asserts that Defendant Rioochi did not review his medical file.  (*Id.*)

Even if Defendant Rioochi wrongly assessed Plaintiff's medication condition on one occasion, that isolated incident does not state an Eighth Amendment claim.  *See Jett*, 439 F.3d at 1096 ("If the harm is an 'isolated exception' to the defendant's 'overall treatment of the prisoner [it] ordinarily militates against a finding of deliberate indifference.'")  Additionally, failure to check Plaintiff's medical file is, at most, negligence that does not support an Eighth Amendment claim.  *See Walter,* 2010 WL 2680535, at *6 (finding that doctor's failure to check a plaintiff's medical file based on his statements about his medical condition was no more than negligence).  Accordingly,

the Court finds that Plaintiff has failed to state a claim upon which relief can be granted against Defendant Rioochi and recommends that he be dismissed.

### 2.    Defendants Stark and Miller

Plaintiff alleges that Defendants Stark and Miller failed to respond to a single "informal attempt at resolution" in which Plaintiff stated that he had been in excruciating pain since October 16, 2011.[11]  (Doc. 28 at 24.)  As the Court found in its June 10, 2014 Order (Doc. 23 at 8, 13-14), this isolated incident is not sufficient to state a claim that Defendants Stark and Miller were deliberately indifferent to Plaintiff's serious medical needs.  Accordingly, Plaintiff has again failed to state a claim upon which relief can be granted against Defendants Stark and Miller and the Court recommends that they be dismissed.

### 3.    Defendant Veckcovic

Plaintiff alleges that, in December 2012, Defendant Dr. Veckcovic "took away Plaintiff's Gabapentin."  (Id.)  He further alleges that, the next day, his blood pressure "skyrocketed" due to his pain and that he "brought the issue to Dr. Veckcovic," but was never "called out" to be evaluated.  (Id.)  Plaintiff alleges that Defendant Veckcovic's termination of his Gabapentin prescription constitutes deliberate indifference to his serious medical needs.  (Id.)  Liberally construing Plaintiff's allegations, he has stated a claim against Defendant Veckcovic.  Accordingly, the Court recommends that he be required to respond to the Second Amended Complaint.

### 4.    Defendants Ryan, Espinoza, Stephan, and Anderson

Plaintiff alleges that he needed paperwork to file a notice of claim under Arizona law, and that he wrote letters to Defendants Espinoza, Stephan, Anderson, and Ryan stating that he needs the "paperwork for risk management," but they have not responded. (Doc. 28 at 26.)  Plaintiff's allegations regarding paperwork allegedly needed to file a notice of claim in Arizona do not state an Eighth Amendment claim for deliberate

---

[11]  Plaintiff reiterates his allegations against Defendants Stark and Miller in Count Four.  (Doc. 28 at 30.)

indifference of a serious medical needs.  Accordingly, the Court recommends that these claims against Defendants Espinoza, Stephan, Anderson, and Ryan be dismissed.[12]

### 5.   Defendant Brower

Liberally construing Plaintiff's allegations that Defendant Brower failed to approve pain medication, including Tramadol and Gabapentin, several times during three different appointments in 2013, and that Plaintiff continued to be in pain (Doc. 28 at 26), Plaintiff has stated a claim for deliberate indifference to serious medical needs against Defendant Brower and the Court recommends that he be required to respond to the Second Amended Complaint.

### 6.   Defendants Shruff and Thompson

Plaintiff's allegations that on one occasion Defendants Shruff and Thompson denied Plaintiff's request for Tramadol does not state an Eighth Amendment claim.  *See Jett*, 439 F.3d at 1096 ("If the harm is an 'isolated exception' to the defendant's 'overall treatment of the prisoner [it] ordinarily militates against a finding of deliberate indifference.'") (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991)). Similarly, as the Court found in its June 10, 2014 Order (Doc. 23 at 9, 13-14), Defendant Thompson's one-time failure to explain why he lowered Plaintiff's dose of Gapaentin does not give rise to an Eighth Amendment violation.  Additionally, although Defendant Shruff did not prescribe the medication Plaintiff requested, he referred Plaintiff for other treatment.  (Doc. 28 at 27.)  "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs."  *Sanchez*, 891 F.2d 242. Accordingly, the Court finds that Plaintiff has failed to state a claim upon which relief can be granted against Defendants Shruff and Thompson and recommends that they be dismissed.

/ / /

/ / /

---

[12]  Plaintiff reiterates these allegations in support of an alleged Eighth Amendment violation in Count Four.  (Doc. 28 at 31.)

### D.      Count Four

In Count Four, Plaintiff again alleges that Defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment. (Doc. 28 at 28-30.)  The standard for stating such a claim is set forth in Section III.B.

#### 1.      Defendants Nash and East

Liberally construing Plaintiff's allegations that Defendants Nash and East repeatedly ignored the recommendation of Plaintiff's surgeon regarding the course of treatment for Plaintiff's hand (Doc. 28 at 28-29), he has stated an Eighth Amendment deliberate indifference claim in Count Four of the Second Amended Complaint against Defendants Nash and East.  The Court recommends that those Defendants be required to respond to Count Four of the Second Amended Complaint.

#### 2.      Defendant Brown

Plaintiff's allegations that, on one occasion, Defendant Brown allegedly cancelled treatment for his broken hand does not state a claim for an Eighth Amendment deliberate indifference claim.  *See Jett*, 439 F.3d at 1096 ("If the harm is an 'isolated exception' to the defendant's 'overall treatment of the prisoner [it] ordinarily militates against a finding of deliberate indifference.'")  Accordingly, Plaintiff has failed to state a claim against Defendant Brown and the Court recommends that he be dismissed.

#### 3.      Defendants Stowell and Greeley

Plaintiff's allegations that on one occasion Defendants Stowell and Greeley failed to respond to Plaintiff's inmate grievances (Doc. 28 at 30) are not sufficient to state a claim that those Defendants were deliberately indifferent to Plaintiff's serious medical needs.  Accordingly, Plaintiff has failed to state a claim upon which relief can be granted against Defendants Stowell and Greeley and the Court recommends that they be dismissed.

### E.      Defendant Lacrone

Plaintiff does not include any allegations against Defendant Lacrone in his Second Amended Complaint.  (Doc. 28.)  Accordingly, Plaintiff has failed to state a claim upon

1  which relief can be granted against Defendant Lacrone and the Court recommends that he
2  be dismissed.

3          Accordingly,

4          **IT IS RECOMMENDED** that the Court construe Plaintiff's motion for
5  reconsideration as a motion for leave to file a second amended complaint (Doc. 28), grant
6  the motion for leave to file a second amended complaint, and direct the Clerk of Court to
7  file the Second Amended Complaint attached to Docket 28.

8          **IT IS FURTHER RECOMMENDED** that Defendants Badilla, Houze, Molera,
9  Pitrowsky Stephan, Fizer, Quintero, Wiggin, Jackson, Tucker, Ryan, Luen, Morales,
10 Rojas, Malachinski, Pratt, Merchant, Rioochi, Stark, Miller, Espinoza, Anderson, Shruff,
11 Thompson, Brown, Stowell, Greeley, Lacrone, Theodore, and Count Two be dismissed.

12         **IT IS FURTHER RECOMMENDED** that the Court order Defendants
13 McCarville, Ochoa, Pruett, Forester, Mcoffy, Smith, Shuster, and Sanders to respond to
14 Count One of the Second Amended Complaint.

15         **IT IS FURTHER RECOMMENDED** that the Court order Defendants
16 Veckcovic and Brower to respond to Count Three of the Second Amended Complaint.

17         **IT IS FURTHER RECOMMENDED** that the Court order Defendants Nash and
18 East to respond to Count Four of the Second Amended Complaint.

19         **IT IS FURTHER RECOMMENDED as follows:**

20         (1)      That the Court order the Clerk of Court to send Plaintiff a service packet
21 including the Second Amended Complaint, this Order and any order adopting it, and both
22 summons and request for waiver forms for Defendants McCarville, Ochoa, Pruett,
23 Forester, Mcoffy, Smith, Shuster, Sanders, Veckcovic, Brower, Nash, and East.

24         (2)      That the Court order Plaintiff to complete and return the service packet to
25 the Clerk of Court within 21 days of the date of Order adopting this Report and
26 Recommendation and advise Plaintiff that the United States Marshal will not provide
27 service of process if Plaintiff fails to comply with the Court's Order.

28

(3)     That the Court warn Plaintiff that if he does not either obtain a waiver of service of the summons or complete service of the Summons and Second Amended Complaint on a Defendant within 120 days of the filing of the Complaint or within 60 days of the filing of the Order adopting the report and recommendation, whichever is later, the action may be dismissed as to each Defendant not served.  *See* Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(i).

(4)     That the Court direct the United States Marshal to retain the Summons, a copy of the Second Amended Complaint, and a copy of the order adopting the report and recommendation for future use.

(5)     That that Court direct the United States Marshal to notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.  The notice to Defendants must include a copy of this Order and any order adopting it.   The Marshal must immediately file signed waivers of service of the summons.  If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

(a) personally serve copies of the Summons, First Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant.  The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, First Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant

pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(6)     That the Court direct that a Defendant who agrees to waive service of the Summons and Second Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.

(7)     That the Court order Defendants to answer the Second Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(8)     That the Court direct that any answer or response must state the specific Defendant by name on whose behalf it is filed.  The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1), should not be filed until entry of the District Court's judgment.  The parties have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6 and 72.  Thereafter, the parties have fourteen days within which to file a response to the objections.

Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the District Court's acceptance of the Report and Recommendation without further review.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

/ / /

/ / /

/ / /

/ / /

1    Failure to file timely objections to any factual determination of the Magistrate
2    Judge may be considered a waiver of a party's right to appellate review of the findings of
3    fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.
4    *See* Fed. R. Civ. P. 72.
5    Dated this 8th day of August, 2014.
6
7
8    _____
9    Bridget S. Bade
10   United States Magistrate Judge
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28